UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | 4:13-CR-142-Y (01) |
| § | |
| JAMIER MARQUIS ROBINS § | |

**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE OR, IN THE ALTERNATIVE, MOTION FOR CONTINUANCE**

TO THE HONORABLE TERRY R. MEANS, SENIOR UNITED STATES DISTRICT JUDGE:

COMES NOW, JAMIER MARQUIS ROBINS, defendant, by and through his attorney of record, CHRISTOPHER A. CURTIS, and hereby submits these and shows as follows:

**I. A two level reduction in offense level is warranted because the Sentencing Commision is lowering the drug guidelines.**

The United States Sentencing Commission is lowering the drug guidelines. On Thursday, January 9, 2014, the United States Sentencing Commission voted to publish proposed guideline amendments that would reduce the sentencing guidelines levels for federal drug trafficking offenses.[1] The bipartisan Commission voted to seek comment on a proposed amendment to lower by two levels the base offense levels in the Drug Quantity Table across drug types in guideline §2D1.1, which governs drug trafficking cases. Commission analysis indicates that such a change in the guidelines would result in a reduction of approximately 11 months for those drug trafficking offenders who would benefit, resulting in a reduction in the federal prison population of approximately 6,550 inmates by the fifth year after the change.

---

[1] http://www.ussc.gov/Legislative_and_Public_Affairs/Newsroom/Press_Releases/20140109_Press_Release.pdf

Motion for downward departure or variance – Page 1

"Like many in Congress and in the executive and judicial branches, the Commission is concerned about the growing crisis in federal prison populations and budgets, and believes it is appropriate at this time to carefully consider the sentences for drug traffickers, who make up about half of the federal prison population," said the Honorable Patti B. Saris, Chair of the Sentencing Commission.[2]  "Our proposed approach is modest," Judge Saris said.[3]

**The department of justice supports the sentencing commission's reasons for lowering the guidelines.** "It's clear . . . that too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason. . . . The bottom line is that . . . we cannot simply . . . incarcerate our way to becoming a safer nation."  These words were spoken just months ago by United States Attorney General Eric Holder.[4]

In a July 11, 2013, letter to Judge Saris at the Sentencing Commission, the Director of the Office of Policy and Legislation for the Department of Justice wrote:

> Now with the sequester, the challenges for federal criminal justice have increased dramatically and the choices we all face - Congress, the Judiciary, the Executive Branch - are that much clearer and more stark: control federal prison spending or see significant reductions in the resources available for all non-prison criminal justice areas. If the current spending trajectory continues and we do not reduce the prison population and prison spending, there will continue to be fewer and fewer prosecutors to bring charges, fewer agents to investigate federal crimes, less support to state and local criminal justice partners, less support to treatment, prevention and intervention programs, and cuts along a range of other criminal justice priorities.

---

[2] *Id.*

[3] *Id.*

[4] Attorney General Eric Holder"s Remarks at the Annual Meeting of the American Bar Association"s House of Delegates (Aug. 12, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html .

Motion for downward departure or variance – Page 2

> \* \* \* \* \*
> The reforms we are focused on - and that we think the Commission can help bring about - are changes to statutory and guideline drug penalties; improving reentry programming and providing greater incentives to offenders to participate in these programs; and simplifying and reforming the guidelines to better meet all the goals of the Sentencing Reform Act, including controlling the prison population.[5]

**The proposed reduction by the Sentencing Commission not only is consistent with the Department of Justice, it follows Congressional dictate.** The Sentencing Reform Act of 1984 established the Commission's organic statute and provided that the Commission, "consistent with all pertinent provisions of any Federal statute," shall promulgate guidelines and policy statements.[6] One of the organic statutes directs the Commission to ensure that the guidelines are "formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons."[7]

This Court is undoubtably aware of the current BOP prison overcrowding, and drug offense sentences are the major cause of the federal prison population increase that has grown by almost 800% since 1980.[8] The Commission's proposed current year 2014 amendments lower the base offense levels contained in the Drug Quantity Table to "reflect [the Commission's] priority

---

[5] http://www.ussc.gov/Meetings_and_Rulemaking/Public_Comment/20130801/Public_Comment_DOJ_Proposed_Priorities.pdf

[6] *See* 28 U.S.C. § 994(a).

[7] *See* 28 U.S.C. § 994(g).

[8] Eric Holder, Att'y Gen., Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013) (hereinafter Holder Remarks), http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html; THE SENTENCING PROJECT, THE EXPANDING FEDERAL PRISON POPULATION 2 (2011) (hereinafter SENTENCING PROJECT), *available at* http://sentencingproject.org/doc/publications/inc_FederalPrisonFactsheet_March2012.pdf .

Motion for downward departure or variance – Page 3

of reducing costs of incarceration and overcapacity of prisons, without endangering public safety."[9] In doing so, the Commission is complying with Congress's directive. This Court's sentence should reflect that same congressional will.

**Even the Bureau of Prisons favors this type of amendment.** The Director of the BOP, Charles E. Samuels, testified before the Commission that "[t]he most direct and immediate way to reduce prison expenditures is to reduce the total number of inmates incarcerated *or the number of years to which they are sentenced*."[10] Studies indicate that extended drug offense sentences contribute significantly to the increase in federal prison population, and "[d]rug offenders comprise the largest single offender group admitted to federal prison."[11] Thus, following the Congressional mandate, the BOP, the Commission, and the DOJ have prioritized the reduction of incarceration expenditures by reforming the federal sentencing policies, including the Sentencing Guidelines.

The reduction is almost certain to happen. On information and belief, to date, Congress has declined on only two occasions to accept a proposed amendment in the Commission's

---

[9] *See* 79 Fed. Reg. 3280 (Jan. 17, 2014); News Release, United States Sentencing Comm'n, U.S. Sentencing Commission Seeks Comment on Potential Reduction to Drug Trafficking Sentences (Jan. 9, 2014), http://www.ussc.gov/Legislative_and_Public_Affairs/Newsroom/Press_Releases/20140109_Press_Release.pdf.

[10] Transcript of Public Hearing Before the U.S. Sentencing Comm'n, Washington, D.C., at 125 (Mar. 13, 2013) (Charles E. Samuels) (emphasis added), http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20130313/Transcript.pdf.

[11] *Federal Bureau of Prisons FY 2014 Budget Request: Hearing Before U.S. House of Representatives Committee on Appropriations, Subcommittee on Commerce, Justice, Science, and Related Agencies*, Statement of Charles E. Samuels, Jr., Director, Fed. Bureau of Prisons, at 2 (Apr. 17, 2013), *available at* http://appropriations.house.gov/uploadedfiles/hhrg-113-ap19-wstate-samuelsc-20130417.pdf; *see* SENTENCING PROJECT *supra* note 3.

Motion for downward departure or variance – Page 4

almost 30 years of existence. The first instance was in 1991, when Congress rejected Amendment 372 regarding child pornography.[12] In the second instance, Congress, in 1995, rejected amendments 5 and 18 relating to lessening crack cocaine sentencing disparities and money laundering and transaction in property derived from unlawful activity.[13] Of course, as this Court knows, in 2010, Congress enacted the Fair Sentencing Act, reducing the disparity between the amount of crack cocaine and powder cocaine from the 100-to-1 ratio to an 18-to-1 ratio and eliminating the five-year mandatory minimum sentence for simple possession.[14] With the passage of the Fair Sentencing Act, Congress has continued the trend of reducing the extensive sentencing related to drug offenses.

Because the Commission and DOJ have both recommitted themselves to implementing the congressional directive set out at 28 U.S.C. § 944(g), and because the DOJ is increasingly focused on prevention and reentry, the commission's proposed 2014 amendment lowering the drug quantity base offense levels is virtually assured. Congress has implicitly dictated this result

---

[12] U.S. SENTENCING COMM'N, THE HISTORY OF CHILD PORNOGRAPHY GUIDELINES 19-24 (2009), *available at*
http://www.ussc.gov/Research_and_Statistics/Research_Projects/Sex_Offenses/20091030_History_Child_Pornography_Guidelines.pdf. Congress disagreed with the Commission's decision to treat receipt and possession of child pornography as similar offenses, and set forth directives to promulgate an amendment that treated receipt cases similarly to trafficking rather than possession. Once the Commission submitted amendments 435 and 436 pursuant to Congress's directives, the amendments became effective on November 27, 1991.

[13] Pub. L. 104-38, 109 Stat. 334 (1995). The Commission sought to reduce the then 100-to-1 ratio for crack cocaine adopted by Congress in the Anti-Drug Abuse Act of 1986 to a 1-to-1 ratio. Congress disagreed, but directed the Commission to submit alternative revisions of the ratio under relevant statutes and Guidelines. The Commission submitted reports in 1997 and 2002 recommending changes in the ratio, but neither proposal prompted congressional action. The Commission did reduce the base offense levels associated with crack cocaine by two levels in 2007, and it passed through Congress without any issue.

[14] Pub. L. 111-220, 124 Stat. 2372 (2010).

Motion for downward departure or variance – Page 5

by way of statute; the DOJ and the Commission are in lock step. Consequently, this Court should lower the base level applicable here by two levels.

Alternatively, should the Court wish to further note the evolution of this proposed amendment, it may wish to consider the imminent March 13, 2014, Sentencing Commission testimony to be presented in support of the amendment. In this case, Defendant would ask the Court to continue sentencing until the late March or early April dockets.

**There is no rational reason not to accomplish the congressional directives reflected in the proposed amendment.** Such a reduction would preserve scarce financial and judicial resources. As stated above, the Attorney General and DOJ have noted the immense economic burden and unsustainability of current incarceration levels. As reflected in the organic statute, Congress agrees.

Moreover, one of the dictates of the Congressional mandate overriding all sentencing concerns it that a sentence should not be greater than necessary to comply with the purposes of sentencing. See 18 U.S.C. § 3553(a). **The Sentencing Commission itself has decided a sentence within the guideline range as set forth in this PSR is greater than necssary** to achieve the goals of sentencing. A reduction to a total offense level of 35, in criminal history category range III, results in a guideline range in this case of 210 - 240  months.

In the alternative, the defendant moves to continue the sentencing until either after the hearings in March, or after November 1, 2014, so that the defendant can get the benefit of this reduction.

## II. Using the purity of the methamphetamine exaggerates the sentencing range beyond the purposes of 18 U.S.C. § 3553

The advisory imprisonment ranges for methamphetamine offenses seriously overstate the seriousness of this particular offense conduct (and, for all practical purposes, the offense conduct in most methamphetamine cases) because they call for higher offense levels and imprisonment ranges for offenses involving pure methamphetamine when this factor is not indicative of higher criminal culpability. It is the usual case that methamphetamine recovered by law enforcement has 80 percent or higher purity level.[15]

Accordingly, there is nothing about the purity level of methamphetamine that reflects any more serious level of culpability of a defendant such as the defendant in this case. This is especially true in this case where the government has interpreted pure or actual methamphetamine to include l-methamphetamine, which the government admits is not as harmful as d-methamphetamine. The government's laboratory analysis does not distinguish the two different types of drugs, so we don't know how much d-methamphetamine was present. What has become the norm in methamphetamine cases is that virtually all defendants found guilty of possessing methamphetamine are now subjected to drastically increased offense levels as a result of the purity of the methamphetamine.

Post-*Booker*, district court's have considerable discretion when determining the proper sentence for a criminal defendant.[16] Sentencing judges are now free to vary from a guideline

---

[15]  *See* Clayton R. Norman *Meth purity, potency up*, The Tombstone Epitaph, April 17, 2011.

[16]  *See Gall v. United States*, 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007).

Motion for downward departure or variance – Page 7

sentence based solely on policy considerations, including disagreements with the guidelines.[17] District courts must "impose a sentence sufficient, but not greater than necessary," to reflect the factors set forth in 18 U.S.C. § 3553(a).[18] Moreover, 18 U.S.C. §3553(a)(6) provides specifically that:

> The court, in determining the particular sentence to be imposed, shall consider — the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

Had no laboratory analysis as to purity been done in this case, the total offense level would be four levels lower. At level 33, and at a criminal history category III, the resulting advisory guideline imprisonment range would be 168-210 months. With the new two level reduction coming in November, as noted above, the advisory guideline imprisonment range would be 121 to 151 months.

---

[17] *See Kimbrough v. United States*, 552 U.S. 85, 101-102, 128 S. Ct. 558, 570 (2007); and *Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007).

[18] *Kimbrough v. United States*, 552 U.S. at 101.

Wherefore, premises considered, the defendant respectfully prays this Court impose a sentence that is either a downward departure or a downward variance from the advisory imprisonment range.

    Respectfully submitted,

    JASON D. HAWKINS
    Federal Public Defender

    BY:  /s/ Christopher A. Curtis
        CHRISTOPHER A. CURTIS
    Asst. Federal Public Defender
    TX State Bar No.  05270900
    819 Taylor Street, Room 9A10
    Fort Worth, Texas 76102
    (817) 978-2753
    Chris_curtis@fd.org

## CERTIFICATE OF SERVICE

I, Christopher A. Curtis, hereby certify that on February 24, 2014, I electronically filed the foregoing motion for downward departure or variance with the clerk of the U.S. District Court, Northern District of Texas, using the electronic filing system for the court. The electronic case filing system sent a "Notice of Electronic Filing" to AUSA Aisha Saleem, and to the office of Steven R. Johnson, U.S. Probation Officer, who presumably has consented in writing to accept this Notice as service of this document by electronic means.

    /s/ Christopher A. Curtis
    CHRISTOPHER A. CURTIS

## CERTIFICATE OF CONFERENCE

I, Christopher A. Curtis, have conferred with AUSA Aisha Saleem, and she is opposed to this motion.

    /s/ Christopher A. Curtis